H. L. BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EMILY WELLS BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12419, 12420. Promulgated November 1, 1948.

*L. J. Benckenstein, Esq.*, for the petitioners.
*Frank B. Schlosser, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge*: In these proceedings, which were consolidated, the respondent determined deficiencies in income tax against petitioners for the taxable years ended December 31, 1943 and 1944, as follows:

| Petitioner | Docket No. | Deficiency | |
|---|---|---|---|
| | | 1943 | 1944 |
| H. L. Brown | 12419 | $3,252.38 | $7,897.51 |
| Emily Wells Brown | 12420 | 1,686.60 | 2,089.03 |

The deficiencies are due to numerous adjustments made by the respondent in the net income as disclosed by petitioners' returns. By stipulation, the parties are in agreement as to all such adjustments, with the exception of adjustments (c) and (e), which the respondent made in the net income as disclosed by petitioner H. L. Brown's return for the taxable year ended December 31, 1944, which adjustments are shown in a statement attached to the deficiency notice to petitioner H. L. Brown, as follows:

| | | |
|---|---|---|
| Net income as disclosed by return | | $146,774.83 |
| Unallowable deductions and additional income: | | |
| (a) Rents increased | $573.46 | |
| (b) Capital gains and losses | 340.02 | |
| (c) Royalty income | 9,298.78 | |
| (d) Loss from business—general expense | 1,050.60 | 11,262.86 |
| Total | | $158,037.69 |
| Nontaxable income and additional deductions: | | |
| (e) Depletion | | 2,557.16 |
| Net income adjusted | | $155,480.53 |

Adjustments (c) and (e) were explained by the respondent in his statement as follows:

(c) and (e)   It has been determined that you realized taxable royalty income of $9,298.78 from the Sun Oil Company in the taxable year. The income involved represented your pro rata part of impounded royalties held for your deceased mother Mrs. Carrie L. Brown, who inherited an interest from her mother Mrs. Frances Ann Lutcher. The amount of percentage depletion allowable thereon is $2,557.16.

There are now no issues to be decided for the taxable year 1943 as to either petitioner, and none for the taxable year 1944 as to petitioner Emily Wells Brown.

H. L. Brown will sometimes hereinafter be referred to as the petitioner, because the only issue now involved concerns him alone.

The facts were stipulated. That part of the stipulation which relates to issues no longer in dispute will be given effect in the recomputations under Rule 50. That part of the stipulation relating to the above mentioned adjustments (c) and (e) is summarized as follows.

Petitioners are husband and wife and are citizens and residents of the State of Texas. They were married prior to the year 1920 and

have resided in the State of Texas as husband and wife, respectively, continuously ever since. The returns for the periods here involved were filed with the collector of internal revenue for the first district of Texas, at Austin.

All of the petitioners' income is community income and all deductions allowed are community deductions, except such royalty income, if any, that petitioner H. L. Brown may have received as a result of the Stark-Brown settlement hereinafter mentioned.

Petitioners' books and records of account during all of the years here involved were kept on the cash receipts and disbursements basis, and their separate returns were rendered during such years on that basis under the community property laws of the State of Texas.

E. W. Brown, Jr., and petitioner are the sons of E. W. Brown and Carrie L. Brown (both deceased) of Orange County, Texas. Carrie L. Brown was the daughter of Henry J. Lutcher and Frances Ann Lutcher, also of Orange County, Texas. Henry J. Lutcher died in October 1912. On the date of his death he owned a large and varied estate, consisting of lands situated in Texas, Louisiana, and other states and stocks, bonds, and other properties, valued at approximately $10,000,000. Frances Ann Lutcher died in October 1924. On the date of her death she owned a large and varied estate, consisting of lands situated in Texas, Louisiana, and other states and stocks, bonds, and other properties, valued at approximately $10,000,000. Mrs. Lutcher was survived by her two daughters, they being her sole heirs at law. One of the daughters was Carrie L. Brown; the other, Miriam M. Stark, the wife of W. H. Stark and mother of the hereinafter mentioned H. J. L. Stark. Mrs. Lutcher left a will which was duly probated in Orange County, Texas, in 1924–1925, and in which H. J. L. Stark, hereinafter sometimes referred to as Stark, was named independent executor. Stark did not probate the will of Mrs. Lutcher in the State of Louisiana until about 20 years later, as hereinafter mentioned.

The will of Mrs. Lutcher consisted of 30 numbered paragraphs. The first 24 paragraphs dealt with the payment of the testator's just debts, funeral expenses, and special bequests with which we are not concerned. Under paragraph 25 the testator gave her daughter Miriam the sum of $1,000,000, "to be paid to her by my executor as soon after my death as can be conveniently done." Under paragraph 26 the testator gave her daughter Carrie the sum of $1,000,000, "to be paid to her by my executor as soon after my death as can be conveniently done." Under paragraph 27 the testator gave all of the entire residue of her estate, "after the payment of the special bequests hereinbefore mentioned and made," to her grandson Stark. The last three paragraphs of the will are as follows:

Twenty-Eighth. I hereby nominate and appoint my grandson, H. J. Lutcher Stark, of Orange, Texas, to be the sole executor of this my last will and testament and I direct that he serve as such without pay and that no bond or security of any character be required of him as such executor and I specially authorize my said executor to sell and dispose of any portion of my estate or all of same as he may see proper at public or private sale and in the manner, for the price, and upon the terms, that to him may seem best and proper, for the purpose of carrying out the provisions and all of the provisions of this will.

Twenty-Ninth. All bequests made by me in this will are expressly made upon the following provisions, to-wit: That should any person to whom a bequest is made herein contest this will or engage in any character of contest or attack thereon, or institute any litigation over my estate in contradiction of the terms of this will, such bequests to such person or persons shall immediately become null and void and the property or properties bequeathed to them shall become a part of the corpus of my estate as though no such bequest had ever been made.

Thirtieth. It is my direction that no other action be had in the courts in the administration of my estate other than the probate of this will and the return of an inventory, appraisement and list of claims.

E. W. Brown died testate in June 1917. He was survived by his wife, Carrie L. Brown, two sons, E. W. Brown, Jr., and petitioner, and a daughter, Fannie Brown Moore, wife of R. A. Moore. Mrs. Moore died intestate in 1918 and was survived by her husband and one child, Babette Moore Odom, wife of Edgar A. Odom. At the time of Brown's death he and his wife owned and possessed in community a large and varied estate, consisting of lands situated in the States of Texas and Louisiana and stocks, bonds, cattle, farm machinery, and other properties.

Carrie L. Brown died in October 1941. She left a will in which she devised and bequeathed all of her property, except minor gifts not pertinent here, to her two sons and granddaughter in the proportions of three-sevenths to E. W. Brown, Jr., three-sevenths to petitioner, and one-seventh to Babette Moore Odom. Carrie L. Brown's will was probated in Orange County, Texas, within three months following her death and thereafter, in 1943–1944, within the State of Louisiana. In addition to her interest in the community properties formerly owned by her and her husband, she also owned a large separate estate, including the unpaid legacy of $1,000,000 willed to her by her mother, Frances Ann Lutcher.

On April 27, 1934, Stark, as executor of the estate of Mrs. Lutcher, granted to the Sun Oil Co. an oil, gas, and mineral lease on the undivided or fractional interest in certain lands owned by the estate of Mrs. Lutcher in indivision with others (including Carrie L. Brown), all of whom, including petitioner, joined in the lease in so far as it affected their respective interests in lands situated in Lafourche, Assumption, and Terrebonne Parishes, Louisiana.

Under the terms of the lease the Sun Oil Co. agreed to pay or deliver unto the lessors, according to their respective interests in the

land, as royalty, one-eighth of the oil produced and saved upon the land selected by the lessee for exploration and development, one-eighth of the market value of the gas sold or used off the premises or in the manufacture of gasoline or other products, $1.25 per long ton of sulphur mined and marketed, and one-eighth either in kind or value of all other minerals at the well or mine at the lessors' election.

The Sun Oil Co. entered upon the land pursuant to the lease and in 1938 developed oil production from a portion thereof. All oil royalties accruing to the estate of Frances Ann Lutcher under the lease were impounded by agreement of the Brown and Stark families pending the settlement of various disputes and controversies existing between them.

Prior to June 1, 1943, there had accrued to the lands of the estate of Mrs. Lutcher royalties in the amount of $44,799.82. Between June 1, 1943, and June 30, 1944, there accrued to the lands of the estate royalties in the amount of $21,697.16.

On January 1, 1943, and for a long time previous to that date, various and sundry differences, disputes, and controversies existed between petitioner and E. W. Brown, Jr., and Mrs. Odom, on one side, and Stark and Lutcher-Moore Lumber Co., of which Stark was president, on the other side. On July 7, 1943, members of the Brown group and members of the Stark group entered into a compromise and settlement of their differences, disputes, and controversies. This compromise and settlement was evidenced by two instruments in writing executed as of July 7, 1943.

The pertinent parts of the first instrument executed as of July 7, 1943, are as follows:

WHEREAS, various and sundry differences, disputes and controversies have developed and exist between some one or more of the Stark Group * * * and some one or more of the Brown Group * * * and

WHEREAS, said Stark Group and said Brown Group have composed their respective differences, disputes and controversies, and have agreed upon a complete and final settlement of each and every difference, dispute and controversy existing between them and each of them:

NOW, THEREFORE, by way of compromise and settlement and in order to forever set at rest the differences, disputes and controversies between them, and for the considerations hereinafter expressed, this contract and agreement has been and is hereby entered into * * * WITNESSETH:

I.

The Stark Group has paid to E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom, in the proportions of three-sevenths to E. W. Brown, Jr., three-sevenths to H. L. Brown and one-seventh to Mrs. Babette Moore Odom, the sum of * * * ($137,255.30) in cash, the receipt of which is hereby acknowledged. * * *

II.

Each and every individual, fiduciary, estate, corporation or other legal entity hereinabove named as comprising the Stark Group * * * HAVE GRANTED,

BARGAINED, SOLD, CONVEYED, TRANSFERRED, ASSIGNED, SET OVER AND DELIVERED, and by these presents do GRANT, BARGAIN, SELL, CONVEY, TRANSFER, ASSIGN AND DELIVER unto E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom * * * the properties described and enumerated on that Exhibit or Schedule hereto attached * * * and marked Schedule "A" * * *.

To HAVE AND TO HOLD the said properties, together with all and singular the appurtenances thereto in anywise belonging * * * forever; and each and every individual, fiduciary, estate, corporation or other legal entity comprising the Stark Group do hereby severally bind themselves, their heirs, executors, administrators and successors, to warrant and forever defend all and singular the said properties unto the said E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom, in said respective proportions, their respective heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, by, through or under them or either of them, but no further.

All ad valorem taxes on said properties for 1943 and subsequent years are hereby assumed, and shall be paid, by the said grantees of said properties.

The said H. J. Lutcher Stark and E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom, by written agreement executed contemporaneously herewith, have agreed that they will institute and prosecute to conclusion in the District Court of the Parish of La Fourche, State of Louisiana, such proceedings as they may be advised by counsel are necessary and requisite, to cause the will of Mrs. Frances A. Lutcher to be filed and registered, and, if required, probated by the Judge of the District Court of the Parish of La Fourche, State of Louisiana, and to place the said E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom in possession of the real estate situated in the Parishes of La Fourche, Assumption and Terrebonne in the State of Louisiana, and described in Paragraph III of Schedule "A" hereon * * * It is agreed between the said H. J. Lutcher Stark, on the one hand, and the said E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom, on the other hand, that should the payment of any inheritance or estate taxes be due the State of Louisiana as a result of the registry and probate of the will of Mrs. Frances A. Lutcher and placing of the said E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom in possession of the real estate belonging to the said Mrs. Frances·A. Lutcher at the time of her death and situated in the Parishes of La Fourche, Assumption and Terrebonne in the State of Louisiana, as aforesaid, such inheritance or estate taxes as well as the cost of proceedings in said District Court in the Parish of La Fourche, State of Louisiana, shall be borne in the proportion of fifty per cent by said H. J. Lutcher Stark and fifty per cent by the said E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom; excluding attorneys fees.

[Under paragraphs III and IV the Brown Group "Granted, Bargained, Sold, Conveyed, Transferred, Assigned, set over and delivered" certain named properties to the Stark Group.]

*       *       *       *       *       *       *

## VI.

The benefits derived under and by virtue of the foregoing Articles hereof are received and accepted by each and every member of the Stark Group and by each and every member of the Brown Group in full, final and complete compromise, accord, settlement and satisfaction of any and all claims, demands and causes of action which they, or any one or more of them, may be asserting or may hereafter assert against the other Group, or any one or more of the members thereof, arising out of or in connection with the controversial matters hereinafter mentioned; and the sums of money, corporate stock and lands men-

tioned or described herein or on the Schedules attached hereto and hereby transferred, conveyed and paid have been transferred, conveyed and paid in full, final and complete compromise, accord, settlement and satisfaction of each and all of said differences, disputes, controversies and/or suits, as well as all of such counter claims, demands, counter-demands, and causes of action as have heretofore arisen, or may hereafter arise, out of or in connection with the said controversial matters hereafter mentioned, or out of or in connection with any of the subject matter thereof, whether asserted, or hereafter to be asserted, by either of said Groups or some one or more of the members thereof, against the other Group, or some one or more of the members thereof. * * *

\*     \*     \*     \*     \*     \*     \*

## X.

Each and all of the parties hereto agree that they and each of them will, from time to time and as often as required, execute and deliver such further and other conveyances, quitclaims, releases, transfers and other written assurances of title as may be required to accomplish the purposes as in this agreement set forth * * * and to cause the Sun Oil Company to pay over to E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom in the proportions above stated, all rents, royalties, revenues or income now being held by it for the account of the Estate of Mrs. Frances A. Lutcher, aggregating $44,799.82 on June 1, 1943.

The third article of schedule A attached to the first instrument executed as of July 7, 1943, described the lands owned by the estate of Frances Ann Lutcher within the State of Louisiana. Among other things this article provided:

It being the desire and intention to convey hereby all lands owned by the said Mrs. Frances A. Lutcher in said parishes at date of her death, or thereafter acquired by the Estate of Mrs. Frances A. Lutcher, or H. J. L. Stark as Executor of the Estate of Mrs. Frances A. Lutcher, together with all rents, royalties, revenues and incomes now due or to become due under all mineral or other leases upon said lands with full subrogation and substitution to all rights of ownership, reversions and privileges by reason thereof.

The second instrument executed as of July 7, 1943, briefly recites, in its preamble, matters of family history. It states that Frances Ann Lutcher died on October 21, 1924; that she left a will in which she named her grandson Stark sole executor and her residuary legatee, and bequeathed to daughters Miriam and Carrie the sum of $1,000,000 each; that the will was probated in the County of Orange, Texas, on January 12, 1925; that at the time of her death she was the owner of certain real estate situated within the State of Louisiana, but that the will had never been filed for registry or presented for probate in that state and that no proceedings had been taken in that state with respect to the will or the property owned by her in Louisiana; that Miriam died on November 27, 1936, but previous thereto donated to her son, H. J. L. Stark, the legacy which her mother had bequeathed to her; that Carrie died on October 3, 1941, but at the time of her death nothing had been paid to her or received by her on account of the legacy which her mother had bequeathed to her; and that the parties had:

* * * composed, settled and adjusted all their rights and differences with respect to the will and estate of Mrs. Frances A. Lutcher, and all of the property thereof, including property belonging to the said Mrs. Frances A. Lutcher and situated in the State of Louisiana at the time of her death; and as a result of such agreement the parties have agreed that the will of Mrs. Frances A. Lutcher shall be filed for registry and probate in the District Court of the Parish of La Fourche, Louisiana, and the Second Parties are to receive and be placed in possession of the real estate belonging to the Estate of Mrs. Frances A. Lutcher and situated in the Parishes of La Fourche, Terrebonne and Assumption, Louisiana, together with all rents, royalties, revenues and incomes now due or to become due under all mineral and other leases upon said lands and with full subrogation and substitution of all ownership rights, reversions and privileges owned or enjoyed by the said Mrs. Frances A. Lutcher, deceased, or the Estate of Mrs. Frances A. Lutcher, deceased, or the First Party as the executor and residuary or universal legatee of the estate of Mrs. Frances A. Lutcher, including any interest in said properties which he, the said First Party owns or enjoys as donee of his mother's rights and interest as heir or legatee of the said Mrs. Frances A. Lutcher, deceased.

At the time of the execution as of July 7, 1943, of the two instruments, 7,494.78 acres of the lands owned by Frances Ann Lutcher in indivision with the other owners named in the lease with the Sun Oil Co., were under lease to the Sun Oil Co., the balance having been previously released therefrom. At the time of the execution of the two agreements as of July 7, 1943, the will of Frances Ann Lutcher had not been probated within the State of Louisiana, nor had any proceedings been had with respect to that part of her estate which was situated therein.

Pursuant to the two above mentioned agreements executed as of July 7, 1943, the Stark and Brown groups filed a joint petition with the seventeenth Judicial District Court, Parish of Terrebonne,[1] State of Louisiana, in which, after reciting the facts set forth in the two agreements, the court was petitioned as follows:

(1) That the court enter its decree adjudging that it was vested with jurisdiction of the succession of Frances Ann Lutcher; that it order that a certified copy of the last will of Frances Ann Lutcher be presented to it; and that said will be admitted to probate and ordered registered and executed in the manner and form provided by the laws of the State of Louisiana.

(2) That the court issue a rule directed to the sheriff and ex-officio tax collector of the Parish of Terrebonne, ordering him to show cause, if any, why the inheritance taxes due the State of Louisiana should not be fixed and determined as set forth in said petition.

(3) That if and when the inheritance taxes had been fixed and paid

---

[1] Paragraph xxiii of the joint petition alleges that, since the principal part of the estate of Frances Ann Lutcher in Louisiana was in the Parish of Terrebonne, the petition of the parties should be filed in that parish, and that the provisions inserted in the two contracts dated July 7, 1943, to the effect that this petition should be instituted in the Parish of Lafourche was inserted through inadvertence.

the court should decree that no further administration on the estate or property of Frances Ann Lutcher be required; that E. W. Brown, Jr., H. L. Brown, and Babette Moore Odom be decreed the owners and entitled to possession of the properties described in the petition, and that said individuals be sent and put in possession of all real estate situated in the Parishes of Terrebonne, Lafourche and Assumption, in the State of Louisiana, belonging to Frances Ann Lutcher at the time of her death or thereafter acquired by the estate of Frances A. Lutcher, in the proportions set forth in the petition, together with all immovables thereon, as well as all rents, royalties, revenues, and income now due or to become due under all mineral and other leases upon said land, with full subrogation of all rights of ownership, reversion, and privileges owned or enjoyed by Frances Ann Lutcher, deceased, or H. J. L. Stark as executor and residuary or universal legatee of the estate of Frances Ann Lutcher, deceased.

On June 30, 1944, the said court in three separate documents decreed: (1) That it was vested with jurisdiction of the estate of Frances Ann Lutcher; (2) that the inheritance taxes due on the inheritance legacies, property, and effects of the estate be fixed at the sum of $15,942.35; and (3) that:

It Is, Therefore, Ordered, Adjudged and Decreed that E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore, wife of Edgar R. Odom, be and they are hereby recognized and decreed to be the owners in the proportions of an undivided ⅜th interest in the said E. W. Brown, Jr., an undivided ⅜th interest in the said H. L. Brown and an undivided ⅛th interest in the said Mrs. Babette Moore, wife of Edgar R. Odom, and as such owners in such proportions are entitled to the possession, and are hereby sent and put in possession, all subject to the terms and conditions of that certain contract and agreement dated the 7th day of July, 1943, executed by H. J. Lutcher Stark, E. W. Brown, Jr., H. L. Brown, Mrs. Babette Moore, wife of Edgar R. Odom, Edgar R. Odom and R. A. Moore, of the following described property * * *.

At the conclusion of the above mentioned proceedings, the Sun Oil Co. on August 15, 1944, paid the previously mentioned royalties that had accrued to the lands of the estate of Frances Ann Lutcher in the aggregate amount of $66,496.98 ($44,799.82 accrued to June 1, 1943, plus $21,697.16 accrued between June 1, 1943, and June 30, 1944) in the proportion of three-sevenths each to E. W. Brown, Jr., and petitioner and one-seventh to Babette Moore Odom.

The respondent determined that the royalties which accrued between June 1, 1943, and June 30, 1944, constituted income to E. W. Brown, Jr., petitioner H. L. Brown, and Babette Moore Odom for the year 1944, and, accordingly, he increased the gross income of petitioner for 1944 by the amount of $9,298.78 (three-sevenths of $21,697.16), less percentage depletion thereon of $2,557.16.

The only question remaining for our determination is whether petitioner is subject to tax in 1944 on the sum of $9,298.78 oil royalties,

less percentage depletion thereon of $2,557.16. The respondent has not determined and does not contend that petitioner is taxable on any part of his three-sevenths share of the $44,799.82 of royalties which accrued from the same lands prior to June 1, 1943, and which was paid to petitioner at the same time the $9,298.78 was paid to him on August 15, 1944. The taxability of those royalties which accrued prior to June 1, 1943, is therefore not involved in these proceedings.

Petitioner contends that the $9,298.78 of royalties is exempt from taxation under section 22 (b) (3) of the Internal Revenue Code, as amended. The material portion of this statute is in the margin.[2]

In this case it is conceded that petitioner took as a legatee under the will of Frances Ann Lutcher, that is to say that his mother, Emily Brown was a legatee under that will and petitioner takes through his mother. His mother was bequeathed $1,000,000 in the will of Mrs. Lutcher. Stark was the sole executor of that will and also its residuary or universal legatee. He had been in charge of the estate for many years, but had never made any payment to Mrs. Brown of her legacy. This had aroused disputes and controversies between the Stark and Brown interests. In 1943 an agreement was reached between them and the terms of this agreement were embodied in writings and signed by the parties. Under this agreement the Brown interests received $137,255.30 in cash which is not involved here, numerous tracts of land in Orange County, Texas, and 7,494.78 acres of land situated in Louisiana. This Louisiana land had been leased to Sun Oil Co. on April 27, 1934, by Stark as the executor of Mrs. Lutcher's estate. All oil royalties accruing to the estate of Mrs. Lutcher under the lease had been impounded by agreement of the Brown and Stark families pending the settlement of various disputes and controversies existing between them. At the time of the signing of the agreement there had been impounded up to June 1, 1943, $44,799.82 oil royalties from the lands which the Brown interests were to receive under the agreement, and it was agreed that these oil royalties were to be paid to the Brown interests, of which petitioner was to receive three-sevenths. Paragraph X of the agreement provides as follows:

Each and all of the parties hereto agree that they and each of them will * * * cause the Sun Oil Company to pay over to E. W. Brown, Jr., H. L. Brown and Mrs. Babette Moore Odom in the proportions above stated, all rents, royalties, revenues or income now being held by it for the account of the Estate of Mrs. Frances A. Lutcher, aggregating $44,799.82 on June 1, 1943.

---

[2] SEC. 22. GROSS INCOME.

* * * * * * *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * * *

(3) GIFTS, BEQUESTS, DEVISES, AND INHERITANCES.—The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. * * *

Respondent concedes that this $44,799.82 was received as a bequest by the Brown interests under the will of Mrs. Lutcher and that it is exempt from taxation under the provisions of section 22 (b) (3). But between June 1, 1943, and June 30, 1944, $21,697.16 additional oil royalties were impounded in the hands of the Sun Oil Co. and were on August 15, 1944, paid over to the Brown interests, along with the $44,799.82. The question is, To whom were these $21,697.16 royalties taxable? Clearly they were taxable to someone, because oil royalties must go into gross income and are diminished by depletion, either on the cost basis or on the percentage basis, whichever is greater. The Commissioner has determined that this $21,697.16 was taxable to the Brown interests, taxing three-sevenths to petitioner. Petitioner contends that the $21,697.16 was paid over to the Brown interests as part of their legacy the same as the other $44,799.82 was paid, and is therefore exempt under section 22 (b) (3). If petitioner is correct in this contention, then manifestly the $21,697.16 would be taxable to the Lutcher estate, which was still in process of administration in the hands of Stark, as executor. Were they taxable to the estate of Mrs. Lutcher? We think that, under the facts which have been stipulated, this question must be answered in the negative, except such part of the $21,697.16 as was accumulated between June 1 and July 7, 1943, when the Louisiana lands were conveyed to the Brown interests.

It will be noted that among the provisions of the agreement which was signed by the parties July 7, 1943, were these:

It being the desire and intention to convey hereby all lands owned by the said Mrs. Frances A. Lutcher in said parishes at date of her death, or thereafter acquired by the Estate of Mrs. Frances A. Lutcher, or H. J. L. Stark as Executor of the Estate of Mrs. Frances A. Lutcher, together with all rents, royalties, revenues and incomes *now due* or *to become due* under all mineral or other leases upon said lands with full subrogation and substitution to all rights of ownership, reversions and privileges by reason thereof. [Emphasis supplied.]

This agreement was signed by Stark, not only in his individual capacity, but also as executor of the estate of Frances Lutcher. Thus it seems clear that from and after the signing of this agreement the Frances Lutcher estate no longer owned any interest in these Louisiana lands nor in the oil royalties which were then accumulated in the hands of the Sun Oil Co. or which were to accrue in the future. By virtue of this agreement, ownership in these lands was vested in the Brown interests as well as all oil royalties then accumulated in the hands of Sun Oil Co. and also any royalties that might accrue in the future. We know of no law which would continue to tax these oil royalties to the estate of Frances Ann Lutcher after this complete settlement and agreement had been made between the parties. In Mertens Law

of Federal Income Taxation, vol. 6, sec. 36.01, the general principles of taxation of estates and trusts are dealt with, and this is said:

> * * * A fiduciary is taxable on (1) income which is either accumulated or held for future distribution, (2) income which is retained by a fiduciary who has discretion as to its distribution, and (3) income of an estate retained by the fiduciary.

We have examined many cases on this general subject and we think the above is a correct statement of the general principles governing the taxation of fiduciaries, including estates in process of adminis-tration. Under these principles we think it was clear that the estate of Mrs. Lutcher was taxable on the $44,799.82 royalties which had been accumulated to June 1, 1943, and likewise on whatever royalties were accumulated between that date and July 7, 1943, the date of the signing of the agreement. It was not until the signing of the agree-ment that the Lutcher estate ceased to be the owner of the Louisiana lands. Up until that date all these oil royalties belonged to the estate. On that date not only all accumulated royalties became the property of the Brown interests, but likewise all royalties which were to accrue in the future.

It is true that certain things remained to be done under the laws of the State of Louisiana before the Brown interests could be put in possession of the 7,494.78 acres of land and the oil royalties already accumulated and the oil royalties which might accumulate from and after the date of the signing of the agreement. The things which had to be done to put the Brown interests in possession of their property were detailed in the agreements which were signed by the parties. Petitioner in his brief lays much stress on these things and cites and discusses Louisiana law and decisions with reference thereto. We have examined the statutes and decisions cited, but we do not think they have the effect of holding that the royalties which accumulated after the ownership of the lands were vested in the Brown interests continued to be the property of the Lutcher estate. On the contrary, the very language of the settlement agreement showed that it was the intention of the parties that from the date of their signing of the agreement the oil royalties as they accrued should be the property not of the estate of Mrs. Lutcher, but of the Brown interests.

It is true, of course, that the year of the taxability of these oil royalties which accrued after the signing of the agreements depended upon certain things being done in Louisiana. Petitioner was on the cash basis and naturally could not be taxed on his part of the $21,697.16 royalties in question until he actually received them. The Commis-sioner does not contend otherwise. Soon after the judgment of the Louisiana court dated June 30, 1944, putting the Brown interests in possession, petitioner was paid his part of the $21,697.16 of royalties here in question, which amounted to $9,298.78. We think respondent

was in error in taxing this full $9,298.78 to petitioner. It is clear that not all of the $21,697.16 was accumulated between July 7, 1943, and June 30, 1944. A part of it was accumulated between June 1 and July 7, 1943, a time during which the Lutcher estate was the owner of these oil lands, and not the Brown interests. Just what this part was we have been unable to determine from the stipulation of facts and the exhibits which are attached thereto. However, it seems clear that these figures are easily available to the parties.

What we hold is that petitioner is taxable on three-sevenths of these oil royalties which accumulated in the hands of the Sun Oil Co. between July 7, 1943, and June 30, 1944, and which shortly thereafter were paid to the Brown interests following the judgment of the Louisiana court. It is these latter figures which should be used in a recomputation under Rule 50.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*